J-A16010-20

2020 PA Super 205

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                  :          PENNSYLVANIA
                                  :
            v.                    :
                                  :
                                  :
WILBUR ANDREW WILSON       :
                                  :
         Appellant         :     No. 59 MDA 2020

Appeal from the Judgment of Sentence Entered December 9, 2019
In the Court of Common Pleas of York County
Criminal Division at No(s): CP-67-CR-0003243-2019

BEFORE: PANELLA, P.J., STABILE, J., and MUSMANNO, J.

OPINION BY PANELLA, P.J.:               **FILED AUGUST 21, 2020**

      Appellant, Wilbur Andrew Wilson, appeals from the judgment of sentence entered in the York County Court of Common Pleas on December 9, 2019. Wilson challenges the sufficiency of the evidence underlying his conviction for failing to drive in the right lane and contends the Commonwealth did not present specific and articulable facts to support the state police's decision to pull him over. The trial court found Wilson guilty of two counts of driving under the influence ("DUI") – controlled substance[1], and one count of restrictions on use of limited access highways[2]. We agree with Wilson's arguments and therefore reverse his convictions.

---

[1] 75 Pa.C.S.A. §3802(d)(1)(i); 75 Pa.C.S.A. §3802(d)(1)(iii).

[2] 75 Pa.C.S.A. §3313(d)(1).

Wilson was charged with four counts of DUI - controlled substance, one count of restrictions on use of limited access highways, for failing to drive in the right lane, and one count of failure to yield to an emergency vehicle. Wilson moved to suppress the evidence gained from the traffic stop. In response to Wilson's motion, the court held a suppression hearing. At the hearing, the Commonwealth presented the testimony of the Pennsylvania State Police corporal involved in the incident. Further, defense counsel played the motor vehicle recording ("MVR") of the interaction for the court as the corporal narrated. Wilson did not testify at the hearing.

On November 28, 2018, the corporal was on duty and heading back to the police station "to handle a complaint on a trooper." N.T., 9/4/2019, at 7. He was heading south on I-83 in York County and travelling in the left lane when he observed a white Ford pickup truck with a Maryland registration in front of him. *See id*. The truck was going less than 60 miles per hour, but above the speed limit of 55 miles per hour. *See id*., at 14.

The corporal observed that as he approached the truck from behind, it began to slow down. *See id*., at 16. He felt the driver, later identified as Wilson, was "barely" passing traffic. However, he admitted Wilson was travelling faster than the vehicles in the right lane. He specifically testified the driver was passing traffic in the right lane and was going faster than the flow of traffic in the right lane. *See id*., at 14 - 16.

The corporal "chirped" his siren to indicate his desire that Wilson move to the right lane, as in his opinion Wilson was not driving fast enough. *Id*., at 7. Wilson did not immediately pull into the right lane. *See id*. The corporal indicated he still had no intention to cite Wilson for any violation. *See id*. He merely wanted Wilson to leave the left lane so he could return to the station to handle a separate matter at the station. *Id*., at 10. He had no other reason for activating his emergency signals at that point. *See id*., at 18-19.

The corporal then activated his lights and turned on his siren. *See id*. at 18. In response, Wilson pulled over to the left side of the highway. *See id*., at 9. The corporal opined that Wilson could have pulled into the right lane behind a red car. *See id*., at 17. When asked whether he felt Wilson violated a statute by pulling over to the left, the corporal replied, "Yeah[, d]uty to approaching emergency vehicles says you should pull to the right." *Id*., at 18.

The corporal was not pleased with Wilson's action and immediately pulled over to the right berm of the highway. *See id*., at 11. He rolled down his window and yelled across the highway at Wilson. *See id*. He told Wilson to get over in front of him on the right side because he wanted to talk to him. The corporal testified that he "swore" at Wilson. *See id.,* at 11. Wilson complied and pulled in front of the corporal. This all happened in a matter of seconds. *See id*., at 19.

The corporal testified that he "probably" was not going to cite Wilson for any Motor Vehicle Code ("MVC") violation at that time. *See id*., at 11.

Furthermore, he stated he approached all of his traffic stops as a drug stop or DUI stop. **See id**.

As the corporal approached the driver side window, he detected the odor of marijuana. He instructed Wilson to exit the vehicle to perform field sobriety tests. Wilson was not able to adequately perform some of the tests given to him, and the corporal was unable to give some of the tests due to Wilson's bad hip. The corporal placed Wilson under arrest for DUI - controlled substances. A blood test indicated Wilson had marijuana metabolites and oxycodone in his system.

Following the hearing, the court denied Wilson's motion to suppress, stating the following:

> I would say this is a close call; however, I believe, based upon [the corporal's] experience as someone who has been employed as a trooper since November of 1996, that, based on the defendant's failure to react to the chirping of the siren and failing to move safely to the right side of the roadway, as required by the Motor Vehicle Code, there was a basis for [the corporal] to make the stop. Therefore, we deny the motion.

Trial Court Order, 9/4/2019, at 3.

On October 11, 2019, the court held a stipulated bench trial. The Commonwealth rested on the affidavit of probable cause and the testimony heard at the suppression hearing. After finding probable cause for the stop, the court found Wilson guilty of two counts of DUI and one count of restrictions on use of limited access highways. Wilson was sentenced to seventy-two hours

to six months' incarceration, plus fines. No post-sentence motions were filed. This appeal followed.

Wilson first challenges the sufficiency of the evidence underlying his conviction for restrictions on use of limited access highways. Our standard of review for a challenge to the sufficiency of the evidence is to determine whether, when viewed in a light most favorable to the verdict winner, the evidence at trial and all reasonable inferences therefrom are sufficient for the trier of fact to find that each element of the crimes charged is established beyond a reasonable doubt. *See Commonwealth v. Dale*, 836 A.2d 150, 152 (Pa. Super. 2003).

The MVC defines the offense of restrictions on use of limited access highways as follows:

> **§ 3313. Restrictions on use of limited access highways**
>
> ***
>
> **(d) Driving in right lane**.--
>
> > (1) Except as provided in paragraph (2) and unless otherwise posted, upon all limited access highways having two or more lanes for traffic moving in the same direction, all vehicles shall be driven in the right-hand lanes when available for traffic except when any of the following conditions exist:
> >
> > > (i) When overtaking and passing another vehicle proceeding in the same direction.
> > >
> > > (ii) When traveling at a speed greater than the traffic flow.
> > >
> > > (iii) When moving left to allow traffic to merge.

(iv) When preparing for a left turn at an intersection, exit or into a private road or driveway when such left turn is legally permitted.

75 Pa.C.S.A. § 3313(d)(1). Pursuant to the statute, Wilson was required to drive in the right-hand lane unless any of the conditions listed within d(1)(i-iv) existed. Wilson argues that Section 3313(d)(1)(i) and/or (ii) authorized his presence in the left lane.

The corporal specifically testified that, while he drove behind Wilson in the left lane, Wilson was passing traffic in the right lane and was going faster than the flow of traffic:

Q. The speed limit is 55?

[Corporal]. Yes.

Q. The vehicle was going above 55?

[Corporal]. Yes. It was going under 60. It was around 58.

Q. So not below the speed limit?

[Corporal]. No.

Q. The vehicle is passing traffic in the right-hand lane while you are behind it, correct?

[Corporal]. Barely passing traffic. It was slow.

**Q. But it was passing traffic?**

**[Corporal]. Yes, it was.**

Q. And it was going faster than the flow of traffic in the right-hand lane, correct?

[Corporal]. Barely. It was still tying up traffic behind it.

**Q. But it was going faster than the flow of traffic in the right-hand lane? Is that fair?**

**[Corporal]. Correct. Yes.**

N.T., 9/4/2019, at 14 (emphasis added). Although Wilson was travelling in the left lane, the record shows he was passing another vehicle travelling in the same direction and was going faster than the flow of traffic in the right lane, both permissible acts under the statute. Therefore, we find the evidence was insufficient to convict Wilson under Section 3313(d)(1).

In his final two issues, Wilson contends the trial court erred in denying his motion to suppress. In reviewing the denial of a suppression motion, we must determine whether the record supports the trial court's factual findings and whether the legal conclusions drawn from those facts are correct. **Commonwealth v. Raglin**, 178 A.3d 868, 871 (Pa. Super. 2018). While our standard of review is highly deferential to the suppression court's factual findings and credibility determinations, we afford no deference to the court's legal conclusions, and review such conclusions *de novo*. **See Commonwealth v. Hughes**, 836 A.2d 893, 898 (Pa. 2003).

Wilson argues the interaction constituted a stop without reasonable suspicion from the moment the corporal activated his emergency lights and siren. Specifically, Wilson disputes the trial court's finding that the interaction only became a stop once Wilson followed the corporal's direction to pull in front of him on the right side of the road. He further contends the corporal failed to establish either reasonable suspicion or probable cause to stop him.

The court found the traffic stop was not effectuated until Wilson pulled over to the right side of the highway in front of the corporal. ***See*** Trial Court Opinion, 3/9/2020, at 5. The court further concluded that, at that time, the corporal acted on reasonable suspicion of impairment. ***See id***.

We find the court failed to recognize the point at which the corporal's interaction with Wilson became a stop. In its opinion, the trial court focuses almost exclusively on the corporal's intentions throughout the interaction in determining when the traffic stop was effectuated. ***See id***. at 4-5. While the trial court is entitled to its credibility determination regarding the corporal's intentions, this is the incorrect standard in a determination of whether a stop occurred.

> [I]n the context of the Fourth Amendment, a person is considered seized only if, in view of all the circumstances surrounding the incident, *a reasonable person would have believed that he was not free to leave*. In evaluating those circumstances, the crucial inquiry is whether the officer, by means of physical force or a show of authority, has restrained a citizen's freedom of movement.

***Commonwealth v. Livingstone***, 174 A.3d 609, 621 (Pa. 2017) (emphasis added).[3] Therefore, the corporal's intentions are not relevant in the analysis of when a traffic stop was initiated. Rather, the focus is on whether a reasonable person in Wilson's position would have felt free to leave.

---

[3] Wilson's appellate brief relies heavily on ***Livingstone***. The Commonwealth's brief does not address ***Livingstone***. ***See*** Appellee's Brief, at 2.

The corporal testified that Wilson promptly pulled his vehicle over to the left side of the highway in response to him turning on his emergency lights and siren. He further testified that it was not his "intent" at this point to effectuate a stop. However, his intent is not dispositive of this analysis.

While motorists may know that police officers may use their overhead lights for reasons other than to command a stop, that does not mean the average motorist would assume that an officer had no interest in detaining the vehicle and would feel free to leave. *See id*. at 623. Further, in the affidavit of probable cause, the corporal specifically stated that he activated the emergency lights "to initiate a traffic stop." Affidavit of Probable Cause, at 1. It is clear the corporal understood the effect his actions had on Wilson.

> It is undeniable that emergency lights on police vehicles in this Commonwealth serve important safety purposes, including ensuring that the police vehicle is visible to traffic, and signaling to a stopped motorist that it is a police officer, as opposed to a potentially dangerous stranger, who is approaching. Moreover, we do not doubt that a reasonable person may recognize that a police officer might activate his vehicle's emergency lights for safety purposes, as opposed to a command to stop. **Nevertheless, upon consideration of the realities of everyday life, particularly the relationship between ordinary citizens and law enforcement, we simply cannot pretend that a reasonable person, innocent of any crime, would not interpret the activation of emergency lights on a police vehicle as a signal that he or she is not free to leave**.

*Id*. at 621 (emphasis added).[4]

_____

[4] We note the lead opinion in *Livingstone* does not constitute a majority opinion. However, the position for which we cite to *Livingstone* did garner

Of relevance here, Section 3325(a) of the MVC, titled "Duty of driver on approach of emergency vehicle," provides:

> Upon the immediate approach of an emergency vehicle making use of an audible signal and visual signals meeting the requirements and standards set forth in regulations adopted by the department, the driver of every other vehicle shall yield the right-of-way and shall immediately drive to a position parallel to, and as close as possible to, the right-hand edge or curb of the roadway clear of any intersection and shall stop and remain in that position until the emergency vehicle has passed, except when otherwise directed by a police officer or an appropriately attired person authorized to direct, control or regulate traffic. On one-way roadways a driver may comply by driving to the edge or curb which is nearest to the lane in which he is traveling.

*Id.*, at § 3325(a). The fact that Wilson risked being charged with a violation of the MVC if he incorrectly assumed he was free to leave after a patrol car, with its emergency lights activated, pulled behind him supports our conclusion that a reasonable person in Wilson's position would not have felt free to leave.

The record also reflects that mere seconds after Wilson responded to the emergency lights by pulling over, the corporal demanded Wilson pull over to the right side of the road in front of his patrol car so he could question him. As such, the corporal displayed authority over Wilson which restrained his

---

the support of a majority of the Justices. *See id.*, at 638-639 (Baer, J., concurring in part and dissenting in part) (agreeing that no reasonable motorist believes she is free to leave after an officer activates emergency signals); *see also id.*, at 641 (Donohue, J., concurring in part and dissenting in part, joined by Wecht, J.) (same).

freedom of movement from the moment he turned his emergency lights and siren on. ***See id*.**, at 621.

We must next determine whether the corporal had reasonable suspicion[5] to justify his stop of Wilson. If a police officer possesses reasonable suspicion that a violation of the MVC is occurring or has occurred, he may stop the vehicle involved for the purpose of obtaining information necessary to enforce the provisions of the Code. ***See*** 75 Pa.C.S.A. § 6308(b). Reasonable suspicion is a relatively low standard and depends on the information possessed by police and its degree of reliability in the totality of the circumstances. ***See Commonwealth v. Brown***, 996 A.2d 473, 477 (Pa. 2010). In order to justify the stop, an officer must be able to point to *specific and articulable facts* which led him to reasonably suspect a violation of the MVC. ***See Commonwealth v. Holmes***, 14 A.3d 89, 95 (Pa. 2011). The standard for assessing whether a given set of observations constitutes reasonable suspicion is an objective one, based on the totality of the circumstances. ***See id*.**

We conclude the facts adduced by the corporal did not provide him with reasonable suspicion to conduct a stop. The corporal testified that the only reason he activated his lights and siren was because he wanted Wilson to pull over so he could get by Wilson to return to the station. ***See*** N.T., 9/4/2019,

---

[5] We note that it is not entirely clear what level of suspicion the Commonwealth was required to prove under these exact circumstances. As we find that the Commonwealth cannot even establish the lesser burden of reasonable suspicion on this record, we will proceed with that analysis.

- 11 -

at 18-19. This is simply not enough to constitute reasonable suspicion for a stop.

Wilson was passing traffic in the right lane, in accordance with a specific exception to Section 3313, when the corporal activated his lights. At this point, the traffic stop had occurred. **See Livingston,** 174 A.3d at 621. As noted above, the corporal did not have specific and articulable facts to support a stop at this time.

However, even if we were to accept the Commonwealth's incorrect theory that the stop did not occur until after Wilson pulled over to the left side of the highway, the corporal did not testify to a legally sufficient basis to stop Wilson. Wilson promptly pulled over to the nearest side of the road in response to an approaching patrol vehicle with its emergency lights and sirens activated, in accordance with an exception to Section 3325 regarding one-way roadways.[6] These circumstances, all of which are permitted by the MVC, are not enough to support a finding of reasonable suspicion for a stop.

Further, the court erred in finding reasonable suspicion based on the corporal's belief that Wilson was either "lost, drunk, or high." **See** N.T., 9/4/2019, at 11. First, the comment above was based on the corporal's admission that he approaches *all* of his stops as a potential drug stop or DUI. **See id**. This broad generalization does not support a "specific and articulable"

---

[6] The Commonwealth does not argue in its brief that this section of I-83 was not a one-way roadway.

fact possessed by him, at the time of the questioned stop, which would provide reasonable suspicion for a stop. Further, the Affidavit of Probable Cause and the corporal's own testimony demonstrates that his interaction with Wilson was based on his belief that Wilson was violating Section 3313, rather than possible impairment.

After a careful review of the record, we find the evidence presented was insufficient to convict Wilson for failing to drive in the right lane, pursuant to Section 3313. Further, we find the evidence does not support the findings of the suppression court regarding when the vehicle stop occurred or that the corporal had reasonable suspicion to justify a vehicle stop of Wilson. The record is devoid of any specific or articulable facts supporting the state police officer's decision to pull Wilson over. Accordingly, the corporal did not have reasonable suspicion to stop Wilson's vehicle and the court should have granted Wilson's motion to suppress. We therefore reverse Wilson's judgment of sentence.

Judgment of sentence reversed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/21/2020