J-S56037-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANTONIO SAUNDERS | : | |
| | : | |
| Appellant | : | No. 684 EDA 2020 |

Appeal from the Judgment of Sentence Entered August 2, 2019
In the Court of Common Pleas of Northampton County Criminal Division
at No(s):  CP-48-CR-0000538-2019

BEFORE:  BENDER, P.J.E., KUNSELMAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:              **FILED:  JANUARY 4, 2021**

Antonio Saunders (Saunders) appeals from the judgment of sentence imposed by the Court of Common Pleas of Northampton County (trial court) after a jury found him guilty of forgery, attempted theft by unlawful taking and identify theft.  We affirm.

**I.**

On Friday, January 25, 2019, Saunders walked into a BB&T Bank and opened a checking account under the name Allen Baynes.  To do this, Saunders used the actual Allen Baynes's social security number and presented a temporary Pennsylvania ID card in that name.  As part of opening the account, Saunders signed three documents.  First, he signed a signature card

_____

[*] Retired Senior Judge assigned to the Superior Court.

for the checking account. Second, he signed a "constant credit application" to establish a $1,500 overdraft line of credit on the account. Third, because the actual Allen Baynes had an existing BB&T account, Saunders signed a client information change request form.

After Saunders opened the account, the branch banker informed him about other services offered by the bank. Saunders showed interest in applying for a $30,000 loan, telling the banker it would be for a surgery. He then left the bank but soon called back to tell the banker that he wanted to apply for the loan. The banker began the application over the phone but needed proof of income to complete the application. Saunders soon returned and submitted a signed IRS Form 1040 in the name of Allen Baynes listing an annual income as $192,000.

Suspicious that Saunders was not Allen Baynes, the banker contacted the bank's fraud division, who then contacted the real Allen Baynes in Alabama, where he resides. He confirmed that he did not open the checking account earlier that day in Pennsylvania. The banker relayed this information to the police and told them that Saunders was returning to the bank after the weekend to sign loan documents.

Sure enough, on Monday, January 28, 2019, Saunders returned to the bank and was taken into custody by detectives. Despite not initially cooperating, Saunders eventually gave his real name. The police then searched his wallet and found several ID cards for Allen Baynes. These

included a social security card (signed), a Visa credit card (signed) and a PNC Bank debit card (unsigned). The police also found several cards in Saunders's name, including his social security, health insurance and credit cards. Finally, the police found an interim New York driver's license for Saunders that listed a New York address. On the back of the license, there was a "cheat sheet" listing, among other things, the name, date of birth and social security number for Allen Baynes, as well as information relating to the loan, including salary ($192,000) and reason ("medical").

Saunders was arrested and charged by criminal information with, among other offenses, forgery, attempted theft by unlawful taking (for the loan) and identity theft.[1] The Commonwealth later amended the forgery charge into seven counts for each document that Saunders signed as Allen Baynes. These were: (1) the signature card; (2) the "constant credit application"; (3) the client information change request; (4) the 1040 Tax Form; (5) the temporary Pennsylvania ID card; (6) the social security card; and (7) the Visa credit card.

After choosing to proceed *pro se* because of his dissatisfaction with appointed counsel, Saunders was tried by a jury that found him guilty on all counts. On August 2, 2019, the trial court sentenced Saunders, who was a Repeat Felon Offender (RFEL) on the prior record score scale, to 40 to 80

---

[1] *See* 18 Pa.C.S. §§ 4101(a)(2), 901(a)/3921(a) and 4120(a), respectively. Saunders was also charged with two counts of access device fraud, 18 Pa.C.S. § 4106(a)(3), but those counts were dismissed at trial.

months' imprisonment for attempted theft and a consecutive 12 to 24 months on one of the forgery counts, resulting in an aggregate sentence of 52 to 104 months' imprisonment.

After sentencing, Saunders filed a timely post-sentence motion challenging the sufficiency and weight of the evidence for his convictions, the prosecutor's opening statement and the legality of his sentence. While the motion was pending, Saunders requested the assistance of counsel and extension of time for disposition of his post-sentence motion. The trial court appointed current counsel and granted the extension.[2] After receiving briefs, the trial court denied the post-sentence motion on December 27, 2019, following which Saunders appealed to reassert the issues raised in his post-sentence motion.

## II.

In his first issue, Saunders challenges the sufficiency of evidence for three of the forgery counts and his conviction for attempted theft by unlawful

---

[2] *See* Pa.R.Crim.P. 720(B)(3)(b) (allowing one 30-day extension, for good cause shown, to the 120-day period for a trial court to dispose of a post-sentence motion).

taking.[3]  For ease of discussion, we address his arguments as they relate to each separate offense.[4]

First, Saunders was convicted of forgery—unauthorized act in writing under 18 Pa.C.S. § 4104(a)(2).  The Crimes Code defines that offense as follows:

> A person is guilty of forgery if, with intent to defraud or injure anyone, or with knowledge that he is facilitating a fraud or injury to be perpetrated by anyone, the actor .... makes, completes, executes, authenticates, issues or transfers any writing so that it purports to be the act of another who did not authorize the act ...

18 Pa.C.S. § 4101(a)(2) (formatting altered).  "We may look to the totality of the defendant's conduct to infer fraudulent intent."  ***Commonwealth v. Green***, 203 A.3d 250, 253 (Pa. Super. 2019) (citation omitted).

---

[3] Although he styles his issue as challenging all his convictions, Saunders makes no substantive argument to either his other four forgery counts or his conviction for identity theft.  He does, however, argue that there was insufficient evidence to convict him for forgery of the loan application.  ***See*** Saunders's Brief at 15-16.  Our review of the record, including the amended information, reveals that he was not charged with forgery in relation to the loan application because he never got the opportunity to sign for it.  To the extent that he conflates the loan application with the "constant credit application," the record is clear that they were separate documents.

[4] "Our standard of review for a challenge to the sufficiency of the evidence is to determine whether, when viewed in a light most favorable to the verdict winner, the evidence at trial and all reasonable inferences therefrom are sufficient for the trier of fact to find that each element of the crimes charged is established beyond a reasonable doubt." ***Commonwealth v. Wilson***, 237 A.3d 572, 576 (Pa. Super. 2000) (citation omitted).

Saunders contends that the Commonwealth presented insufficient evidence to convict him of forgery for the signature card to open the checking account. His argument, which consists of one sentence, asserts that the Commonwealth did not admit the card at trial. *See* Saunders's Brief at 16 ("There was no evidence of completion of [a] signature card."). Indeed, the Commonwealth did not admit the card at trial, nor did the banker testify that Saunders ever signed such a form as Allen Baynes.

That said, the banker testified that Saunders opened the checking account and deposited money. *See* N.T. Jury Trial, 6/4/19, at 61. To open an account, she explained, "there is a signature card that needs to be signed." *Id*. at 54. Viewing this evidence in the light most favorable to the Commonwealth as the verdict winner, the jury could reasonably infer that Saunders signed the signature card to open the checking account, even though the Commonwealth did not admit the card at trial. For that reason, there was sufficient evidence to convict for the first forgery count.

Next, in another one-sentence argument, Saunders asserts that "[t]hat there was no evidence that any social security card or credit card was presented as part of any [f]orgery." Saunders's Brief at 16. Saunders is referring to the social security and Visa credit cards recovered on January 28, 2019, both of which were in the name of Allen Baynes and had signatures matching those that Saunders made to the other forged writings. Saunders appears to argue that there is insufficient evidence that he possessed the

forged writings with fraudulent intent since he did not present either card to open the checking account or apply for the loan.

While we agree neither card was requested nor presented at the bank, we still look to the totality of Saunders's conduct to determine whether there was sufficient evidence of fraudulent intent. According to the banker, Saunders returned to the bank on January 28, 2019, under the belief that he would sign the loan documents. *See* N.T. Jury Trial, 6/4/19, at 61. When he did, he brought with him the forged social security and credit cards in Allen Baynes's name. Again, viewing this evidence in the light most favorable to the Commonwealth as the verdict winner, the jury could reasonably infer that Saunders possessed the forged cards with the intent of securing the $30,000 loan; that he was never asked or gained the opportunity to present them does not negate his intent, and he cites no case law to the contrary. As a result, we find there was sufficient evidence to convict him of forgery for the social security and credit cards in the name of Allen Baynes.

Saunders next challenges the sufficiency of evidence for his attempted theft by unlawful taking related to requesting the personal loan under the name of Allen Baynes. In support, he highlights that the Commonwealth never admitted the loan application at trial. *See* Saunders's Brief at 15. He also argues that the proceeds of the loan ($30,000) would not constitute "movable property" for the underlying crime of theft by unlawful taking. *Id*. at 16.

"A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." 18 Pa.C.S. § 901(a). "A person is guilty of theft if he unlawfully takes, or exercises unlawful control over, movable property of another with intent to deprive him thereof." 18 Pa.C.S. § 3921(a). Movable property, meanwhile, is defined as "[p]roperty the location of which can be changed, including things growing on, affixed to, or found in land, and documents although the rights represented thereby have no physical location." 18 Pa.C.S. § 3901.

First, the banker's testimony at trial was sufficient to establish that Saunders applied for the loan. She testified that when she told Saunders about the loan services offered by the bank, Saunders mentioned he would be interested in a personal loan "for a surgery of some sort." N.T. Jury Trial, 6/4/19, at 65. Then, after he left, Saunders called back and told her that he wanted to apply for the loan. *Id*. She asked him to come back to the bank, but Saunders said he just got home and would rather apply for the loan over the phone. *Id*. at 66. The banker then began the loan application but was unable to complete it because she needed Saunders to provide a tax return. *Id*. at 67. At first, Saunders emailed the tax return, but because the banker could not upload it into the bank's system, he needed to return to the bank to submit a hard copy, which he did that same day. *Id*. at 67-68. After Saunders submitted the 1040 Tax Form, the banker became suspicious and contacted

the bank's fraud division. After they confirmed Saunders was not Allen Baynes, the banker contacted the police. *Id*. at 71-72. Based on all this, the banker did not prepare the loan documents. *Id*. at 73.

As a result, contrary to Saunders's argument, there was no actual loan application for the Commonwealth to admit at trial. Instead, the Commonwealth relied on the banker's testimony to establish that Saunders attempted to obtain the loan, which was why he returned to the bank that following Monday, January 28, 2019. Viewing the banker's testimony in the light most favorable to the Commonwealth, this was sufficient to establish that Saunders took substantial steps to trying to obtain the fraudulent loan. Thus, his first argument fails.

Likewise, we find that the proceeds of the requested loan constitute movable property for the underlying offense of theft by unlawful taking. As noted above, movable property includes intangible property represented by "documents although the rights represented thereby have no physical location." 18 Pa.C.S. § 3901. This definition is broad enough to include the proceeds of the loan for which Saunders applied. Because the bank determined that he was not Allen Baynes, the proceeds of the requested loan were never converted into movable property, whether by cash or check. This does not mean, however, that Saunders did not try to deprive the bank of its money. Consequently, the proceeds sought by requesting the loan constitute movable property and are sufficient to convict Saunders for attempted theft.

Saunders also attacks his convictions by pointing out that the criminal information listed the offenses as being committed "on or about" Monday, January 28, 2019. *See* Amended Information, 6/4/19, at 1. He asserts that the Commonwealth presented no evidence that any crime was committed on that date. *See* Saunders's Brief at 16-17.

Bills of information are governed by Pennsylvania Rule of Criminal Procedure 560, which states that the information will be valid and sufficient if it contains:

> the date when the offense is alleged to have been committed if the precise date is known, and the day of the week if it is an essential element of the offense charged, provided that if the precise date is not known or if the offense is a continuing one, an allegation that it was committed on or about any date within the period fixed by the statute of limitations shall be sufficient[.]

Pa.R.Crim.P. 560(B)(3). "The purpose of the information is to advise the accused of the allegations and the crimes charged, to give sufficient notice to allow the opportunity to prepare a defense, and to define the issues for trial." *Commonwealth v. Kisner*, 736 A.2d 672, 674 (Pa. Super. 1999).

We find the Commonwealth's information was sufficient to put Saunders on notice of what he was charged with. Although Saunders first went into the bank and signed several documents on January 25, 2019, his conduct continued until he returned to sign the loan documents on January 28, 2019. As the Commonwealth notes, it is afforded "broad latitude when attempting to fix the date of offenses which involve a continuous course of criminal conduct." *Commonwealth v. Benner*, 147 A.3d 915, 921 (Pa. Super. 2016)

(citation omitted). Moreover, Saunders does not allege that he was misled or unable to prepare his defense based on the criminal information. **See Commonwealth v. Sims**, 919 A.2d 931, 939 (Pa. 2007) (stating that "[t]o comport with due process, the notice provided must be sufficiently specific so as to allow the defendant to prepare any available defenses should he exercise his right to a trial."). Without Saunders alleging that he was unable to prepare his defense, the information was specific enough to allow him to prepare his defense. As a result, his claim warrants no relief.

## III.

Saunders also challenges the weight of the evidence for his convictions, which he properly preserved in a timely post-sentence motion.[5] He alleges that there was a break in the chain of custody of the cards seized from his wallet on January 28, 2019, because they were not logged into evidence until February 6, 2019. **See** Saunders's Brief at 18-19.

---

[5] When evaluating a challenge to the weight of the evidence to support a conviction, this court does not reweigh the evidence presented at trial, but rather evaluates the trial court's denial of the motion for a new trial for an abuse of discretion. **Commonwealth v. Clay**, 64 A.3d 1049, 1054-55 (Pa. 2013). An abuse of discretion occurs "where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will." **Id.** (citation omitted). A trial court's determination that the verdict was not against the weight of the evidence is "[o]ne of the least assailable reasons for granting a new trial." **Id.** (citation omitted).

"An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court." **Commonwealth v. Sullivan**, 820 A.2d 795, 805-06 (Pa. Super. 2003) (citation omitted). "Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice." **Commonwealth v. Widmer**, 744 A.2d 745, 752 (Pa. 2000) (quotations omitted). A new trial is appropriate only when the verdict "is so contrary to the evidence as to shock one's sense of justice." **Commonwealth v. Olsen**, 82 A.3d 1041, 1049 (Pa. Super. 2013) (citation omitted). "[T]he evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court." **Commonwealth v. Akhmedov**, 216 A.3d 307, 326 (Pa. Super. 2019) (*en banc*) (citation omitted).

After reviewing the whole record, we find no relief is due. Putting aside all of the other evidence establishing guilt he does not address, Saunders raised his argument about the cards in his wallet at trial, but the trial court admitted the cards after the Commonwealth presented evidence about the wallet being found on Saunders. **See** N.T., 6/4/19, at 109 (admitting the contents of the wallet). In denying this claim, the trial court explained:

> Here, the time gap between the seizure of the items and items getting logged into custody is not dispositive of evidence tampering. This Court allowed [Saunders] the opportunity to pursue this issue at trial, and the jury disagreed with [his]

argument. Therefore, this Court finds that the weight of the evidence presented at trial is not contrary to the jury's verdict, and [Saunders] is not entitled to a new trial.

Trial Court Opinion, 12/27/19, at 7. We agree with this analysis and find that the trial court did not abuse its discretion in denying Saunders a new trial based on the weight of the evidence.

**IV.**

Saunders next challenges the prosecutor's opening statement, arguing that he committed prosecutorial misconduct warranting a new trial. *See* Saunders's Brief at 19-20. Besides Saunders failing to object and preserve this claim, *see* Pa.R.A.P. 302(a), the prosecutor's statement was not prejudicial. The prosecutor began his opening statement as follows:

This gentlemen over here behind me essentially tried to rob the BB&T bank on the weekend of January 25th through January 28th of 2019. He didn't use a mask or a gun. He didn't hand any note to a frightened teller.

Instead, he used a methodical and carefully planned deception that involved assuming the identity of another person …

N.T., 6/4/19, at 47.

"In reviewing prosecutorial remarks to determine their prejudicial quality, comments cannot be viewed in isolation but, rather, must be considered in the context in which they were made." *Commonwealth v. Sampson*, 900 A.2d 887, 890 (Pa. Super. 2006) (citation omitted). "Generally, comments by the district attorney do not constitute reversible error unless the unavoidable effect of such comments would be to prejudice

- 13 -

the jury, forming in their minds fixed bias and hostility toward the defendant so that they could not weigh the evidence objectively and render a true verdict." *Id*.

Viewed in context, the statement did not have the unavoidable effect of prejudicing the jurors. As he quickly clarified, the prosecutors briefly used the term "rob" to mean steal rather than, as Saunders appears to argue, committing a theft through the use of physical force. Indeed, after using the term, the prosecutor stated that Saunders used no such force. Thus, even if Saunders had properly preserved this claim, we would find that the prosecutor's comment was within the bounds of advocacy and not prejudicial.

**V.**

Finally, Saunders challenges the legality of the trial court's sentences for attempted theft conviction and forgery.[6] First, he argues that the attempted theft charge was not submitted to the jury because the trial court denied the Commonwealth's request to amend the underlying offense from theft by unlawful taking of movable property to theft by deception. *See* Saunders's Brief at 21. However, as the Commonwealth points out, the trial court's denial of the amendment did not cause the charge being dismissed.

---

[6] "Issues relating to the legality of a sentence are questions of law." ***Commonwealth v. Wolfe***, 106 A.3d 800, 802 (Pa. Super. 2014) (citation omitted). "Our standard of review over such questions is *de novo* and our scope of review is plenary." ***Id.***

*See* N.T. Jury Trial, 6/4/19, at 24-26.  As a result, the Commonwealth was permitted to pursue the attempted theft by unlawful taking charge, which, as discussed above, was supported by sufficient evidence.

Next, Saunders challenges his sentences for forgery by noting that some of the counts should have been graded as first-degree misdemeanors rather than third-degree felonies.  *See* Saunders's Brief at 21.  Saunders, however, fails to acknowledge that the trial court corrected this issue at sentencing.

In its criminal information, the Commonwealth charged all the forgery counts as third-degree felonies.  *See* Amended Information, 6/4/19, at 1.  At sentencing, however, the Commonwealth conceded that some counts were misgraded under 18 Pa.C.S. § 4101(c), but noted that the only change would be to the maximum possible sentence because forgery as a third-degree felony or first-degree misdemeanor has the same offense gravity score.  *See* N.T. Sentencing Hearing, 8/2/19, at 12-13.[7]  The trial court then imposed sentences of 12 to 24 months' imprisonment on each count, running all but one of the counts concurrent to the 40 to 80 months' imprisonment imposed

---

[7] *See* 18 Pa.C.S. § 4101(c) ("Forgery is a felony of the third degree if the writing is or purports to be a will, deed, contract, release, commercial instrument, or other document evidencing, creating, transferring, altering, terminating, or otherwise affecting legal relations.  Otherwise forgery is a misdemeanor of the first degree."); *see also* 204 Pa. Code. § 303.15 (providing that both forgery graded as third-degree felony and first-degree misdemeanor have offense gravity score of 3).

for attempted theft. *Id.* at 19-20. All the sentences for forgery are within the statutory maximum and in the standard range guidelines.

Moreover, our review of the record shows that the probation department corrected the sentencing forms to reflect the proper grading for the four forgery offenses that should have been graded as first-degree misdemeanors: the signature card; the 1040 Tax Form; the temporary Pennsylvania ID card; and the social security card. Because Saunders does not explain how any of the sentences for these offenses were illegal, we find the claim meritless.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/4/21