J-A10040-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT |
| | : | OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| | : | |
| JONATHAN WALTON | : | |
| | : | |
| Appellant | : | |
| | : | No. 197 EDA 2025 |

Appeal from the Judgment of Sentence Entered December 5, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0005859-2023

BEFORE: STABILE, J., LANE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                          **FILED JUNE 29, 2026**

Appellant, Jonathan Walton, appeals from the judgment of sentence entered December 5, 2024, in the Court of Common Pleas of Philadelphia County following his stipulated bench trial conviction for carrying a firearm without a license[1] and carrying a firearm on public streets or public property in Philadelphia[2]. After careful review, we affirm.

The facts and procedural history are as follows:

At approximately 10:50 AM on August 3, 2023, Philadelphia Police Officer Jessie Rosinski (hereinafter "Officer Rosinski") was traveling in full uniform in an unmarked police vehicle near 3700 North 17th Street in Philadelphia Pennsylvania. N.T. Suppression Hearing 5/7/2024 (hereinafter

---

[*] Former Justice specially assigned to the Superior Court.
[1] 18 Pa.C.S. § 6106
[2] 18 Pa.C.S. § 6108

"N.T.") at 11, 29. Officer Rosinski had been employed as a law enforcement officer for seven years and during that time had conducted a number of arrests for firearm-related offenses and had recently responded to two homicides and conducted fifteen arrests for firearm-related offences in the immediate vicinity of this incident, which was itself known to Officer Rosinski to be near to two open-air drug markets. *Id.* at 19-21.

At that time, Officer Rosinski's partner saw Appellant on the sidewalk and indicated he believed Appellant was carrying a firearm[3]. *Id.* at 12. The officers then made a U-turn and drove towards Appellant without activating their lights or sirens. *Id.* at 12, 30. Upon seeing the officers approaching, Appellant hid himself behind a parked car and turned his body, including his waist, away from the officers while keeping his face pointed towards them. *Id.* 12, 14, 21, 24, 34. As the vehicle pulled up alongside Appellant, Officer Rosinski fully lowered his window, which had been only partially lowered previously. *Id.* 32-33. Officer Rosinski addressed Appellant, asking "what's up?" Trial Court Opinion May 9, 2025, (hereinafter "Trial Court Opinion") at 11. *See Commonwealth Exhibit 1* at 1:00-1:01. Officer Roskinski then asked Appellant if he had a gun on him as the officer opened his car door. *Id.* at 12. *See Commonwealth Exhibit 1* at 1:01-1:05. Appellant immediately fled, ran onto a porch and then down a flight of stairs before being tased by

---

[3] Officer Rosinski's partner did not testify at the suppression hearing, and thus no testimony was adduced explaining the basis for his statement. *Id.* at 13-14.

the pursuing officers. *Id.* at 12. *Id.* at 12. The officers thereafter recovered a firearm that had been tucked into Appellant's underwear. *Id.* at 12-13.

Appellant was subsequently charged with carrying a firearm without a license[4] and carrying a firearm on public streets or public property in Philadelphia[5]. Prior to trial, Appellant filed a motion to dismiss and a motion to suppress, and both motions were denied by the lower court. Appellant proceeded to a stipulated bench trial on May 7, 2024, immediately following denial of his motion to suppress, and he was at that time convicted on both counts. *Id.* at 61. Appellant was sentenced on December 5, 2024, to an aggregate term of incarceration of eleven-and-one-half to twenty-three months, to be followed by two years of probation. *Id.* N.T. Sentencing Hearing December 5, 2024, at 20. Appellant timely filed his notice of appeal on January 7, 2025, and the instant appeal followed.

Appellant raises two issues for this Court's review:

1. Whether the lower court erred in denying Mr. Walton's motion to suppress, where police obtained the physical evidence pursuant to an unlawful detention without reasonable suspicion that he was engaged in criminal activity, in violation of U.S. CONST. AMENDS. IV & XIV as well as the broader protections under PA. CONST. ART. I, § 8?

2. Whether the lower court erred in denying Mr. Walton's motion to dismiss, because 18 Pa.C.S. §§ 6106, 6108 & 6109 violate U.S. CONST. AMENDS. II & XIV as well as the broader protections under PA. CONST. ART. I, §§ 1 & 21?

_____

[4] 18 Pa.C.S. § 6106
[5] 18 Pa.C.S. § 6108

Appellant's Brief at 4.

Regarding Appellant's first issue, we observe that:

[Our] standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the appellate court is] bound by [those] findings and may reverse only if the court's legal conclusions are erroneous.

*Commonwealth v. Dewald*, 317 A.3d 1020, 1030 (Pa.Super. 2024) (citations omitted), *appeal denied*, 333 A.3d 647 (Pa. 2025).

Initially, we note there are three levels of interactions between police and citizens: mere encounters; investigative detentions; and custodial detentions. *Commonwealth v. Clinton*, 905 A.2d 1026, 1030 (Pa.Super. 2006). We have delineated these levels as follows:

A mere encounter can be any formal or informal interaction between an officer and a citizen, but will normally be an inquiry by the officer of a citizen. The hallmark of this interaction is that it carries no official compulsion to stop or respond.

In contrast, an investigative detention, by implication, carries an official compulsion to stop and respond, but the detention is temporary, unless it results in the formation of probable cause for arrest, and does not possess the coercive conditions consistent with a formal arrest. Since this interaction has elements of official compulsion it requires reasonable suspicion of unlawful activity. In further contrast, a custodial detention occurs when the nature, duration and conditions of an investigative detention become so coercive as to be, practically speaking, the functional equivalent of an arrest.

- 4 -

*Commonwealth v. Jones*, 874 A.2d 108, 116 (Pa.Super. 2005) (citations omitted).

In determining whether an investigative detention has occurred, we have observed that "a person is considered seized only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave," *Commonwealth v. Livingstone*, 644 Pa. 27, 174 A.3d 609, 619 (Pa. 2017)(cleaned up). In so determining, "whether the officer, by means of physical force or a show of authority, has restrained a citizen's freedom of movement" is of critical importance. *Commonwealth v. Wilson*, 237 A.3d 572, 577 (Pa.Super. 2020)(cleaned up).

Furthermore,

Reasonable suspicion exists only where the officer is able to articulate specific observations which, in conjunction with reasonable inferences derived from those observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot and that the person he stopped was involved in that activity. Therefore, the fundamental inquiry of a reviewing court must be an objective one, namely, whether the facts available to the officer at the moment of intrusion warrant a [person] of reasonable caution in the belief that the action taken was appropriate.

*Jones*, *supra*, at 116.

As we have previously observed, "it is well settled that unprovoked flight in a high crime area is sufficient to create a reasonable suspicion to justify an investigatory stop." *Commonwealth v. Warren*, 350 A.3d 1018, 1027

(Pa.Super. 2025). *See Commonwealth v. McCoy*, 154 A.3d 813, 819 (Pa.Super. 2017) (holding the appellant's unprovoked flight and "evasive and suspicious behavior in a high crime area on a particularly cold winter night" gave rise to reasonable suspicion that criminal activity was afoot) (citation omitted).

Here, the lower court found that the interaction between Officer Rosinski and Appellant rose to the level of an investigative detention when Officer Rosinski stepped out of his vehicle and asked Appellant whether he had a gun, and at that time the lower court found the officer had reasonable suspicion that Appellant was engaged in criminal activity based upon Appellant's having hid from the officers and having bladed his body in such a way as to conceal his waistband from the officers during their interaction, which occurred in a high-crime area where Officer Rosinski himself had made dozens of firearm arrests. Trial Court Opinion at 11. While we disagree with the trial court's determination as to when the interaction rose to the level of an investigatory detention, we agree that the seizure of Appellant was supported by reasonable suspicion and thus was lawful. *See Commonwealth v. Joyner*, 348 A.3d 230 (Pa.Super. 2025) (holding an officer approaching a pedestrian in broad daylight and asking whether the pedestrian was carrying a firearm, then getting out of his vehicle, *did not* rise to the level of an investigative detention where the officer did not activate lights and sirens, did not draw their weapons, and did not communicate to the pedestrian that he was not free to leave).

Rather, we find the detention in this matter occurred when Officer Rosinski called after Appellant and simultaneously initiated his pursuit of Appellant as he fled[6]. At that time, the record provides support for the determination that Officer Rosinski had reasonable suspicion that criminal activity was afoot. Appellant was moving evasively along the street in a high crime area; he had hidden himself behind a vehicle and was blading his waistband away from the officer who was clearly visible and wearing his full uniform. Upon being asked if he was carrying a firearm in his waistband, Appellant fled from the officers. Under those facts, a person of reasonable caution is certainly justified in the belief that pursuit and detention of Appellant was appropriate.

Thus, we find that Appellant's first issue merits no relief, and we affirm the trial court's denial of his motion to suppress.

_____

[6] There is some disagreement between the parties over what was said by Officer Rosinski on his recorded body camera footage as Appellant began to flee. Appellant contends that Officer Rosinski "commanded that [Appellant] 'hold up,'" while the Commonwealth contends the officer could "be heard saying in a conversational tone, 'Huh. Yeah. Hold on,'" which the Commonwealth suggests may have been directed at Officer Rosinski's partner, not Appellant. Appellant's Brief at 21, Appellee's Brief at 4. However, after review of the record, including the body camera footage, we find support for the trial court's factual determination that Appellant fled immediately after Officer Rosinski asked if Appellant was carrying a firearm. As it is beyond cavil that no reasonable person would feel they were free to leave once an officer began chasing them, what the officer said as he began his chase is immaterial. Appellant had been seized at that moment in either case.

Turning to Appellant's second issue, we begin by noting that there is no indication anywhere in the record that Appellant ever applied for a license to carry a firearm. Trial Court Opinion at 6. Thus, this issue amounts to a purely theoretical challenge to the licensing scheme as set forth in 18 Pa.C.S. §§ 6106, 6108 & 6109.

> In Pennsylvania, the doctrine of standing . . . is a prudential, judicially created principle designed to winnow out litigants who have no direct interest in a judicial matter. For standing to exist, the underlying controversy must be real and concrete, such that the party initiating the legal action has, in fact, been aggrieved. . . . [T]he core concept [of standing] is that a person who is not adversely affected in any way by the matter he seeks to challenge is not 'aggrieved' thereby and has no standing to obtain a judicial resolution to his challenge.

**Commonwealth v. Donahue**, 98 A.3d 1223, 1229 (Pa. 2014)(quotation marks omitted).

Therefore, although Appellant was convicted pursuant to Pa.C.S. § 6108, "because he never sought to obtain a license he was not adversely affected in any way by the matter he seeks to challenge," he lacks standing to challenge either the licensing criteria or the forty-five day waiting period with which he takes issue. **See Commonwealth v. Sumpter**, 340 A.3d 977, 994-95 (Pa.Super. 2025) (Lane, J., dissenting) (*citing* **New York State Rifle & Pistol Ass'n, Inc. v. Bruen**, 597 U.S. 1, 142 S. Ct. 2111, 213 L. Ed. 2d 387 (2022); **Commonwealth v. Livingston**, 332 A.3d 1229 (Pa.Super. 2024) (unpublished memorandum at *19-20)).

Furthermore, even should Appellant have had standing to raise this issue, he "acknowledges that this Court recently rejected challenges to Pennsylvania's firearm licensing scheme," and thus this court would have been bound to affirm the lower court's denial of his motion. Appellant's Brief at 37, n. 95 (*citing* **Commonwealth v. Williams**, 350 A.3d 139 (Pa.Super. 2025)).

As such, we find that Appellant's second issue merits no relief where he lacks standing to raise it, and thus we affirm the trial court's denial of his motion to dismiss.

As Appellant has failed to raise any issue meriting relief, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/29/2026

- 9 -